STATE OF VERMONT

ENVIRONMENTAL COURT

|  |  |  |
|---|---|---|
| | } | |
| 114 College Street Permit Amendment | } | Docket No. 227-09-06 Vtec |
| (re additional 20-space parking waiver) | } | |
| (Appeal of McGrew, et al.) | } | |
| | } | |

Decision and Order

Appellants Barbara McGrew, Daniel Fivel, Jowall Limited Partnership, and Leonora, LLC appealed from a decision of the Burlington Development Review Board regarding a mixed residential and commercial project proposed for property located at 114 College Street in Burlington. Appellants McGrew, Fivel, and Jowall Limited Partnership are represented by Norman C. Williams, Esq. and Ross A. Feldmann, Esq.; Appellant Leonora, LLC is represented by Robert C. Roesler, Esq.; Appellee-Applicant Investors Corporation of Vermont is represented by Christina Jensen, Esq.; and the City of Burlington is represented by Kimberlee J. Sturtevant, Esq.

Appellee-Applicant's Motion to Dismiss Leonora, LLC as a Party

The Court ruled in Docket No. 199-10-04 Vtec that only Leonora, Inc. had party status regarding issues affecting on-site circulation and access to the adjacent street network, and that Appellants McGrew, Fivel, and Jowall Limited Partnership have party status only on issues relating to the potential height of (and rooftop structures on) the project building, and therefore its visibility potentially affecting their property at the corner

1

of St. Paul Street and Bank Street.[1]  In a decision issued on April 20, 2007 in the present appeal, the Court denied Appellee-Applicant's motion to dismiss the appeal, stating that "[e]ven if Appellants McGrew, Fivel, and Jowall Limited Partnership were dismissed[2] as to the same issues as in Docket No. 199-10-04 Vtec, Appellee-Applicant's motion to dismiss the appeal for lack of standing would have to be denied on the basis that Appellant Leonora LLC has standing to raise those issues."  Appellee-Applicant has now moved to dismiss Appellant Leonora LLC, claiming that it lacks standing to proceed with this appeal.

Contrary to Appellants' argument, a party's standing or party status may be raised at any time, if circumstances change so as to raise an issue of whether a party has become divested of standing, as a party's standing to proceed with the case may be jurisdictional.  See In re Appeal of Garen, 174 Vt. 151, 153–54 (2002); Town of Washington v. Emmons, 2007 VT 22, ¶6.  For example, a party may lose standing by selling property or by moving away from the neighborhood of the project.  Similarly, a group party of ten citizens (having standing under 24 V.S.A. §4465(b)(4)) may lose standing if one of its members withdraws from the appeal.  The issue of whether Leonora, LLC, lacks standing to continue with this appeal is therefore properly before the Court.

Appellee-Applicant has not shown any reason to divest Leonora LLC of its standing.  Beyond the issue of height as it may be affected by the number of residential units in the building, Leonora LLC has an interest in the parking regime for all the parking in the

[1]  Contrary to the characterization of them in their memorandum as adjoining property owners (across St. Paul Street), their building is not located directly across St. Paul Street from the project property.  It is instead at the northerly end of the block, across from unrelated property at the corner of St. Paul and Bank Streets.  In addition, a church is located on the westerly side of St. Paul Street between the project property and that unrelated building at the corner of Bank Street.

[2] Those Appellants have not been dismissed as to those issues to date in the present appeal.

buildings on the neighboring merged property, including as to whether existing spaces that are now informally available to the public will become unavailable for public use, as well as to preserve the availability of the spaces to which it is entitled under its predecessor's 1984 agreement. It also has an interest in the adequacy of circulation into and out of the building from the adjoining street network, even though the alternate spaces under consideration in the new waiver proposal have access from College Street rather than exiting directly onto Pine Street.

Accordingly, Appellee-Applicant's Motion to Dismiss Leonora LLC is DENIED.


Motion to Exclude Expert Testimony

At trial, Appellants renewed their motion to exclude the evidence of Mr. Chamberlin, whose testimony taken subject to the later briefing of the motion.

That motion is DENIED, as Mr. Chamberlin possesses sufficient expert qualifications to testify as an expert on parking and traffic management issues, as his testimony meets the standards of V.R.E. 702, despite the hearsay nature of some of the information on which he based his testimony. V.R.E. 703. However, in reaching its decision on the merits of the present appeal, we must note that the Court did not find persuasive Mr. Chamberlin's testimony relating to the characteristics of commercial parking garages or garages outside Vermont, especially those in Boston and in San Diego, because the out-of-state evidence was insufficiently comparable to the subject proposal. In particular, the parking required for the proposed project is to serve a multi-unit residential building in the same complex as the parking facility. Unlike the Boston facilities it is not a free-standing commercial parking garage in which spaces are leased independently of the parking requirements for the residential units. In addition, unlike the San Diego examples, the parking necessary to serve the proposed project must function during snow conditions when there may be an overnight ban on on-street parking on certain streets or in certain areas.

3

Motion for Judgment based on Issue Preclusion and/or Res Judicata

At trial, Appellants moved for judgment as a matter of law "based on issue preclusion and/or res judicata;" the trial proceeded subject to the later briefing of the motion.

The single remaining question on the merits of the present appeal is whether Appellee-Applicant is entitled to a waiver of twenty additional parking spaces, beyond the waiver of thirty spaces approved in Docket No. 199-10-04 Vtec. In Docket No. 199-10-04 Vtec, now on appeal to the Supreme Court, this Court had approved almost all aspects of the proposed project,[3] but determined that the proposed parking arrangements only supported a parking waiver for thirty of the fifty parking spaces otherwise required under the ordinance.

The Court therefore conditioned its approval of the remainder of the project on Appellee-Applicant's obtaining additional approvals from the DRB, and granted a partial remand to the DRB for that purpose. The Court ordered in pertinent part as follows:

> As a waiver is only granted [by the Court decision] of thirty of the required spaces . . . , Appellee-Applicant shall obtain approval from the DRB either of additional waivers, or of revised parking plans showing additional parking spaces, either within the proposed building or as alterations to any other structures on the merged property, sufficient to meet the parking requirements discussed in this decision.

In re Appeal of McGrew, Docket No. 199-10-04 Vtec, slip op. at 19 (Vt. Envtl. Ct., Mar. 3, 2006). In its proceedings on remand, the DRB again granted a parking waiver for the additional twenty parking spaces, and Appellants have again appealed in the present

---

[3] The project consists of a ten-story mixed-use building, including a bank automatic teller machine accessed by vehicles, two commercial offices on the ground floor, fifty residential units, twelve of which are proposed for low- and moderate-income housing, and and associated parking located within the building beginning on the ground floor and extending two floors below the ground floor.

4

appeal.

In its April 20, 2007 decision on motions in the present appeal, the Court applied the analysis from In re Appeal of Armitage, 2006 VT 113 (which had been decided by the Vermont Supreme Court after this Court's decision in Docket No. 199-10-04 Vtec). The Court ruled that:

> Appellee-Applicant may present evidence on the changes it now proposes in the application to address the insufficiency of twenty parking spaces as discussed in the prior decision, but it may not present evidence that it could have presented but failed to present when the matter was last before the Court. For example, the Court found in the prior decision that Appellee-Applicant had "demonstrated the availability of alternate transportation modes (bus and bicycle), but presented no evidence about the projected use of those modes by the projected residents of the building." Appellee-Applicant may not now present such evidence.
>   On the other hand, Appellee-Applicant may present evidence of, and may request parking waivers based on, the new changes in the proposal, that is, the provision of spaces elsewhere on the property, the changed "parking management practices," or the specific newly-proposed covenant or deed restrictions.

In re: 114 College St. Permit Amendment, Docket No. 227-9-06 Vtec, slip op. at 4 (Vt. Envtl. Ct., Apr. 20, 2007).

In the trial on the merits, Appellee-Applicant presented a revised application seeking to address the reasons for which the full parking waiver was denied in the earlier case. Nothing in Armitage requires that such allowable revisions to an application must constitute physical changes to the structure or to the physical property involved in the project.

In the present case, Appellee-Applicant does not propose to make any[4] physical changes in the plans for the proposed building to address the parking waiver issues.

---

[4] Certain physical changes that addressed the other issues remanded in the 2006 decision are not at issue in the present appeal.

Rather, Appellee-Applicant now proposes the following alterations in the proposal for the project, arguing that they justify the additional waiver of twenty parking spaces for which it has applied.

As to the parking requirements for 114 College Street, Appellee-Applicant now proposes the following elements that were not proposed in connection with the 2004 application:

(1) to provide language in the declaration and deeds for each residential units restricting each units to the right to lease one parking space within the building,

(2) to provide twenty additional fee-based leased parking spaces to the residents at certain times in another existing parking area within the merged property, and

(3) to provide for "parking management practices" (an unwritten parking management plan), including registration of vehicles with Appellee-Applicant, and the potential for towing of vehicles, to ensure that these shared use spaces are available for commercial parking during regular business hours.

Appellants argue that the Court should not consider this proposal because it could have been developed and submitted in the initial application. However, this argument suggests the absurd result that applicants have only one chance to submit an approvable application; that is, that a revised successive application could never be allowed after an application was denied. This interpretation would render surplusage of the statutory provision allowing DRBs to regulate successive applications. 24 V.S.A. § 4470(a). Statutes must instead be construed so that no language is surplusage, In re Dunnett, 172 Vt. 196, 199 (2001), and so that the construction does not produce an absurd result. See, e.g., Willard v. Parsons Hill Partnership, 2005 VT 69, ¶21, 178 Vt. 300, 308 (2005); In re: Wong Notices of Violation, Docket Nos. 169-7-06 Vtec and 293-12-06 Vtec, slip op. at 2 (Vt. Envtl. Ct., Mar.

6

12, 2007).

Rather, nothing in <u>Armitage</u> or in the statute prevents an applicant from submitting a new revised proposal aimed at dealing with a reason an application was denied in whole or in part, even if, in hindsight, it could have developed that new proposal in the earlier proceeding if it had known that its original proposal would be denied. <u>Armitage</u> does not require applicants to have that degree of prescience as to whether their original or preferred proposals will be approved by the DRB or by this Court. Rather, <u>Armitage</u> only precludes submitting new evidence on the original proposal, if that evidence could have been submitted in the original proceeding; it does not preclude submitting a new, revised proposal addressing the problems for which the original proposal was denied.

Even under the limitations of <u>Armitage</u>, Appellee-Applicant's present request for an additional twenty-space parking waiver may therefore be considered by the Court, as the new proposals represent a revised application seeking to address the reasons for which twenty spaces (of the full fifty-space parking waiver requested in the earlier case) were denied. Accordingly, Appellants' motion for judgment as a matter of law based on issue preclusion and/or <u>res</u> <u>judicata</u> is DENIED.

Merits of Remaining Issue: Twenty-Space Parking Waiver

The single remaining question on appeal is Appellants' Question 7: whether Appellee-Applicant should be granted a waiver of twenty additional parking spaces.

In addition to the parking spaces proposed in connection with the new construction, the merged property contains a two-level existing parking structure providing 102 spaces, of which 51 on the lower level are accessible from an entrance from 126 College Street, and the remainder on the upper level are accessible from 95 St. Paul Street. Appellee-Applicant manages those parking spaces; and owns and manages a total of over 450 parking spaces in downtown Burlington, including those within a few blocks at 30-40-60 Main Street. It

7

has experience operating managed parking areas in Burlington since 1984. Appellee-Applicant issues so-called wands or cards to its users, and requires for leased parking that the users register with Appellee-Applicant the vehicles that will be using the allocated spaces. Appellee-Applicant operates a gate system governed by computer in its central office, with software capable of tracking the specific users entering and exiting the gates of its parking structures. The wands can be programmed to operate the gates only during the hours specified in the specific lease. This system enables Appellee-Applicant to enforce the time limitations of shared or dual use leased spaces with unique use times. In addition, some of the spaces under the control of Appellee-Applicant in buildings or structures other than the subject property may be available from time to time to be leased commercially (including potentially to residents of 114 College Street).

Approximately 3,500 public parking spaces are available on the street, in public surface lots and garages, and as publicly-available spaces in other structures in the downtown Burlington area within a thousand-foot radius of the project property (an approximately four-minute walk). The City of Burlington enforces a nighttime parking ban on parking on city streets and surface lots during snow emergencies and as necessary to facilitate snow plowing.

In the present proposal Appellee-Applicant seeks approval of a waiver for twenty additional parking spaces for the residential uses in 114 College Street, based on proposals for restrictions in the deeds to those units and/or in the owners' association covenants, in conjunction with the shared or dual use of at least twenty fee-based parking spaces in the lower level of the parking facility in the existing building on the merged property, that is, in the 51 spaces accessible from 126 College Street. Appellee-Applicant proposes to manage those spaces so that they are allocated to the residential uses at 114 College Street during evenings, weekends, and holidays, that is, except during the hours of 7:00 a.m. to

5:30 p.m.[5] on weekdays.

Although the merged property contains existing office space and two restaurants, for which the current zoning ordinance would require as much as 232 parking spaces if it were new construction (and if no waivers were applicable to it), none of the permits applicable to the remainder of the property require Appellee-Applicant to provide any parking, other than twenty spaces under the L'Amanté restaurant's permit in the 126 College Street building during the restaurant's evening hours. Within the 51-space lower level parking in the existing parking structure at 126 College Street, Appellee-Applicant proposes to provide the twenty spaces for the L'Amanté restaurant's evening use, as well as the twenty additional spaces for the proposed 114 College Street residential use.

Appellee-Applicant proposes to provide language in the declaration or in the deeds for the residential units restricting each residential unit to a right to only one fee-based leased parking space[6] within the building, and to provide for twenty spaces of additional fee-based leased parking to the residents for overnight, weekend and holiday use in the lower-level 126 College Street parking area, and to manage its parking, including registration of vehicles with Appellee-Applicant and the potential for towing of vehicles,[7] to ensure that these shared use spaces are available to their respective users during the times provided in their respective leases.

---

[5] The commercial tenants' leases provide the spaces from 8:00 a.m. to 5:00 p.m.; the one-hour or half-hour difference appears to be proposed to allow time for Appellee-Applicant's employees to check that the spaces have been vacated by the other user, and to tow or move the vehicles if necessary.

[6] Appellee-Applicant may, of course, provide for the lease or sublease of any such spaces to other residents in the event that a unit resident has no vehicle.

[7] As Appellee-Applicant now requires for the lessees of its commercial spaces, as shown in the sample lease attached to the Surprenant affidavit.

Section 10.1.19 allows the waiver of the otherwise-applicable requirements for parking upon a demonstration that the requirements are unnecessarily stringent for reasons of, among other reasons, unique use times or shared or dual use. Appellee-Applicant has demonstrated that the additional waiver of twenty parking spaces within the 114 College Street building is warranted by reason of shared or dual use during unique use times. Residents with more than one vehicle who leave the area during daytime work hours will most easily be able to avail themselves of these spaces; residents who do not leave the area during daytime work hours will have to move their vehicles or make other arrangements for parking in the ample available daytime spaces during the daytime work hours.

The waiver based on the current proposal to make at least twenty additional parking spaces available in 126 College Street for lease by the residents of 114 College Street overnight on weekdays and on weekends and holidays is hereby approved, subject to the conditions stated below, to assure that the shared or dual use proposal will function in practice and will not conflict with the availability of the public spaces in 114 College Street.

First, the limitations must be stated in the deeds, whether directly or by reference to the requirements of the building's current zoning approval, as well as in the declaration of covenants for the building's owners' association, because such covenants can be changed with a sufficient vote of the association in the future. These limitations are that each unit is entitled to lease only one parking space within 114 College Street, that residents are prohibited from parking any vehicles in the public spaces within 114 College Street, and that each unit occupant must have arrangements for off-street parking of any additional vehicle, at least during those non-workday hours (that is, other than from 7:00 a.m. to 5:30 p.m. Monday through Friday) when on-street parking is prohibited by the City.

Second, Appellee-Applicant's management of the parking within the 114 College Street garage must assure that the residents do not park any of their vehicles in the spaces

10

meant to be available to the public. In order for Appellee-Applicant to be able to manage the parking in 114 College Street as well as in 126 College Street, the 114 College Street occupants will have to register all their vehicles with Appellee-Applicant, regardless of whether their other parking arrangements for those vehicles are in one of Appellee-Applicant's facilities.

Third, Appellee-Applicant must make available twenty spaces in 126 College Street for lease by residents of 114 College Street during non-workday hours year-round (that is, other than from 7:00 a.m. to 5:30 p.m. Monday through Friday), and must assure that the 126 College Street parking is managed so as to assure the availability of those leased spaces without conflict with the spaces allocated to the L'Amanté restaurant's permit.

Accordingly, Appellee-Applicant's application for an additional waiver of 20 parking spaces for the project is GRANTED, subject to the following conditions:

1. Appellee-Applicant shall place the following restrictions in the unit deeds and in the covenants of the owners' association, either directly or by reference to the zoning approval for the building, and shall, in its management of the parking for the combined property, enforce the following provisions:

(a) each unit is entitled to lease only one parking space within the 114 College Street building;

(b) all vehicles in the possession of the unit occupants shall be registered with Appellee-Applicant;

(c) residents are prohibited from parking any vehicles in the public spaces within 114 College Street;

(d) residents shall make and be able to demonstrate arrangements for off-street parking of any additional vehicle, at least during those non-workday hours (that is, other than from 7:00 a.m. to 5:30 p.m. Monday through Friday) when on-street

11

parking is prohibited by the City.

2. Appellee-Applicant shall manage the parking within the 114 College Street garage, to assure that the residents do not park any of their vehicles in the spaces meant to be available to the public.

3. Appellee-Applicant shall make available twenty spaces in 126 College Street for year-round lease by residents of 114 College Street (during hours other than from 7:00 a.m. to 5:30 p.m. Monday through Friday), and shall manage the 126 College Street parking to assure the availability of those leased spaces without conflict with the spaces allocated to the L'Amanté restaurant's permit.

4. As of the date of the Certificate of Occupancy for 114 College Street, Appellee-Applicant shall maintain in its offices and provide to the residents of 114 College Street a written parking management plan for the vehicles in possession of the residents of 114 College Street, stating Appellee-Applicant's then-current parking management plan with reference to implementing the conditions of this approval, and shall provide it to the zoning authorities of the City upon request.

Done at Berlin, Vermont, this 14ᵗʰ day of December, 2007.

_____
                    Merideth Wright
                    Environmental Judge